UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>    v.<br><br>MITCHELL JOSEPH PIERCE,<br><br>        Defendant.<br>_____/ | No. 1:22-cr-152<br><br><br><br>Hon. ROBERT J. JONKER<br>United States District Judge |

### Sentencing Memorandum

Mitchell Pierce has pleaded guilty to stalking and being a felon in possession of firearms. These charges followed Pierce harassing and threatening his ex-wife for months before being arrested when he confronted her and was in possession of firearms. This Court will sentence Pierce on June 5, 2023.

The Court has the authority to impose a sentence of 30 years of imprisonment—the combined statutory maximums. Given the nature and magnitude of Pierce's conduct, his history of similar behavior, to deter him and others like him, and most importantly, to protect the public, a sentence of 180 months or more is appropriate.

   **I.    Facts**

Pierce had been married to M.S., but in August 2021, he was convicted of assaulting her with a dangerous weapon. (R.29: PSR, PageID.96, ¶ 9.) As a condition of his probationary sentence, he was ordered to have no contact with M.S. (*Id.*)

In December 2021, while the no-contact order remained in effect, Pierce began regularly contacting M.S. (*Id.*, PageID.97-99, ¶ 10.) M.S. reported the contacts as they

occurred. (*Id.*) He would call, leave voicemails, text, send Facebook messages, videocall (FaceTime), and email her. (*Id.*) In these messages, Pierce threatened to harm and kill M.S., her children, and her friends and family; Pierce also threatened to kill himself, sending live video of him holding a gun to his head and images of firearms and ammunition. (*Id.*) Attached as sentencing exhibits 1, 2, and 3 are representative text and images taken from a cell phone extraction of a Samsung phone that Pierce possessed at his arrest. Pierce also had an Apple iPhone at arrest; exhibits 4 through 10 are from that device. Pierce sent calls, voicemails, messages, and images through April 2022, despite the court order forbidding him to contact M.S. (*Id.*)

On April 28, 2022, Pierce threatened a former boyfriend of M.S. (*Id.*, PageID.100, ¶ 14.) On May 2, 2022, shots were fired at the house where that man lived with his parents. (*Id.*, PageID.100, ¶ 18.) That same morning, Pierce sent M.S. an audio recording of shots being fired and a video of himself driving past her house. (*Id.*, PageID.101, ¶ 19.) He also sent a text saying, "I don't lie I back everything I promise. Ask [her ex-boyfriend]." (*Id.*)

During the same time period, Pierce's former divorce and criminal defense attorneys filed a complaint with police about a threatening email he sent them. (*Id.*, PageID.100, ¶ 15.) Police had also received complaints about threats Pierce was making from his parents, the mother of his son, and others. (*Id.*, PageID.99-100, ¶¶ 13, 16, 17.)

In the evening hours of May 2, 2022, M.S. hit Pierce with her minivan in a parking lot in Muskegon. (*Id.* PageID.101, ¶ 20.) M.S. noticed a white Jeep following her and pulled into a parking lot; Pierce was driving the Jeep. (*Id.*, PageID.102, ¶ 30.) He exited his Jeep and approached her. (*Id.*) Fearing for her safety, she struck him with her vehicle twice and then left the scene. (*Id.*)

Police responded and saw that Pierce's rental Jeep was not drivable and that he had fled the scene. (*Id.*, PageID.101, ¶ 22.) Police officers searched the Jeep before having it impounded and found a loaded pistol, two rifles, five 9mm magazines (three loaded), two .22 caliber magazine (both loaded), additional ammunition, and a ballistic vest. (*Id.*) This was consistent with part of an email he had sent M.S. on April 23, 2022:

> OK I got my fucking body armor together I got my guns ready

Pierce had also sent an email on April 22, 2022, threatening to kill her and her children:

> Think what you want, I promised you that if cheated or fucked me over I would kill you. You have betrayed me way more then I betrayed you. I asked you to call however you just wanted a Nigger dick.. let me tell ya.. you really fucked up.. I will kill you bitch.. 100% you are going to fucking die. I was going to let you and the boys live if you called me and actually talk.. instead you wanted to play with me.. M[redacted] this is you last chance.. if you don't call today I will fucking murder you and it's not going to be a fast death. I am going to torture you for hours.. your cause of death is going to be decapitation, but before that happens you will kill all your children while while it's recorded then your going to be tied up and be cut with a razor blade at 2 inch slices all over your entire body. You will be fucked by a baseball bat wrapped in Barbed wire, all while being recorded. You will be tortured for aprox 18 hours before your actually beheaded. Your entire family is about to die because of you.

At the bottom of the email he included the following:

```
M▮▮▮▮▮▮ S▮▮▮
                    D.O.B  2▮-05-19▮
                    D.O.D  2▮-05-20▮
Cause of Death: Decapitation
Survivers: None
Children: Decessed

Mother killed children
```

Her full name and date of birth were included but are redacted here to protect her privacy; he indicated that her date of death would be her upcoming birthday and suggested he would also kill her children.

## II. Sentencing Considerations

### A. Nature and Circumstances of the Offense

The nature and circumstances of the offense are summarized in the Presentence Report and the preceding paragraphs. Numerous circuit courts have recognized the seriousness of these offenses and consequently upheld upward variances and departures. *See, e.g., United States v. Bowker*, 372 F.3d 365, 391 (6th Cir. 2004) (upward departure upheld where, inter alia, the harassment involved "numerous, multi-media contacts (letters, telephone calls, email and interstate travel); and involved contact with [victim's] friends and family members"); *United States v. Lee,* 790 F.3d 12, 19 (1st Cir. 2015) (upward variance appropriate in a "serious interstate stalking case" that "created exceeding danger" and when district court noted "nothing it could do would deter" defendant); *United States v. Cain*, 779 F. App'x 6, 10 (1st Cir. 2019) (above-guidelines sentence appropriate following "a relentless . . . stalking campaign" involving threats to "brutally rape and murder the victim and her family" which caused her "to live a life of constant paranoia and fear");

4

*United States v. Figueroa*, 738 F. App'x 719, 722 (2d Cir. 2018) (above-guidelines sentence appropriate in a "stalking with violence" matter); *United States v. Loew*, 362 F. App'x 333, 335 (9th Cir. 2010) (upward departure upheld based on "repeated commission of the same offense . . . , extreme psychological injury to the victim . . . , and endangerment of the public welfare").

### B. History and Characteristics of the Defendant

Pierce's abhorrent offense conduct is the latest in a history of offenses against women and offenses involving violence and weapons; his criminal history reflects his unwillingness or inability to conform his conduct with the law or the restrictions the legal system puts on him.

In 2010, he was convicted of interfering with electronic communications and malicious destruction of a building when an ex-wife reported that he had cut her telephone line and attempted to break into her home through a window. (R.29: PSR, PageID.108, ¶ 59.) He violated probation and was eventually discharged without improvement. (*Id*.) That same year, he was convicted of domestic violence. (*Id*., PageID.108, ¶ 60.)

In 2012, he was convicted of felonious assault after receiving, as he put it, bad news about a custody dispute. (*Id*., PageID.110-11, ¶ 63.) He became enraged and hit, scratched, and choked the victim and held a knife to his throat. (*Id*.)

In 2013, he served a prison sentence on an aggravated stalking conviction. (*Id*., PageID.111-12, ¶ 65.) In that matter he used social media and text messages to threaten an ex-girlfriend and her family. (*Id*.) Pierce sent threats to harm her, her

5

son, and her grandson, sent an image of himself with a shotgun, and said he was monitoring her home. (*Id.*) Witnesses had seen him in the vicinity of her home. (*Id.*) When contacted by police, Pierce was uncooperative and told them he had "lots of ammo." While he was in prison on the stalking offense, he was also serving concurrent time for felon in possession; he had been arrested in possession of a shotgun. (*Id.*, PageID.111, ¶ 64.) He had four misconduct findings while in prison. (*Id.*)

Most recently, in 2021, he was convicted of felonious assault. (*Id.*, PageID.112-13, ¶ 66.) He accused M.S. of cheating, attacked her, choked her, and threatened her with a knife, saying he would kill her. (*Id.*) He was still on probation for that when the offense conduct occurred. (*Id.*) He had pending probation violations and had threatened his probation officer. (*Id.* and PageID.98, n.1.) His repeated contact with M.S. was in violation of the terms of his probation. (*Id.*, PageID.96, ¶ 9.)

Pierce has had numerous probation violations whenever he is placed on supervision, he has a history of failing to appear in court, and had repeated findings of misconduct while in custody. (*Id.*, PageID.107-113, ¶¶57-64.) Pierce is not only incapable of complying with the law, but he does also not comply with the terms of supervision or incarceration placed on him as a consequence of his criminal convictions. *See, e.g., United States v. Cechini*, 834 F. App'x 201, 203 (6th Cir. 2020), where the Sixth Circuit upheld this Court's upward variance based on:

> (1) a long pattern of abuse in domestic situations against women and of violent activity generally; (2) a pattern of ignoring court requirements . . . , (3) his extensive criminal history . . . .and . . . concerns about public safety, risk to people in [the defendant's] life . . . [the] likelihood of repetitive conduct and seriousness of what happened.

(internal quotations omitted).

### C. The Seriousness of the Offense and Just Punishment

As described above and in the presentence report, these were serious offenses. Pierce's threats impacted not just M.S., but as she noted in her victim impact statement, he "also made threats to kill/injure law enforcement, his probation officer, attorneys, their children and to conduct a school shooting." (R.29: PSR, PageID.103, ¶32.) He took steps in furtherance of his threats by looking up information about those parties and by acquiring firearms, ammunition, and body armor. (*Id.*) There is strong circumstantial evidence that he followed through on one of his threats by shooting repeatedly at the home of M.S.'s ex-boyfriend. (*Id.*, PageID.100-01, ¶¶ 18-19.) Pierce even acknowledged that M.S. was "scared to death" of him. (*Id.*, PageID.104, ¶ 35.) M.S. continues to fear his eventual release lest she "become fair game again" and he resume "hunting [her] and [her] family." (*Id.*, PageID.103, ¶ 32.) Because of the seriousness of the conduct here; specifically, the ongoing and graphic nature of the threats, the shooting of one residence, the lashing out at numerous victims including court staff and attorneys, and the possession of three firearms, seven magazines, numerous rounds of ammunition, and body armor, a just punishment would be at or above the 180 months of incarceration recommended in the presentence report. (*Id.*, PageID.126.)

### D. Adequate Deterrence and Protection of the Public

Finally, a severe sentence is necessary to deter the defendant and others like him and to protect the public from future crimes of the defendant. Pierce has demonstrated that previous sanctions, including prison, have not deterred him from

engaging in a pattern of abuse involving women. (*Id*, PageID.108, ¶ 59; PageID.110, ¶ 62; PageID.111-12, ¶¶ 64-65; PageID.112-13, ¶ 66.) Pierce seems unable or unwilling to comply with terms placed on him by courts—resulting in failures to appear for court hearings, probation modifications, probation violations, and probation revocations. (*Id*. PageID.107, ¶ 57; PageID.108, ¶ 59; PageID.108, ¶ 60; PageID.109, ¶ 61; PageID.109, ¶ 62; PageID.110, ¶ 63; PageID.112, ¶ 66.) He was on probation, and repeatedly violated the terms of his probation, when he committed this offense conduct. (*Id*., PageID.113, ¶ 68.) As M.S. pointed out, "once the defendant is no longer behind bars there is no longer a way to prevent him from hurting others. Court orders? He will ignore it. Court[ ]hearing? He will skip it and leave the state. Law Enforcement or Probation Officer? He said he will kill them and their kids . . . the world is a safer place [with] him behind bars." (*Id*., PageID.104, ¶ 32.)

## Conclusion

Everything about Pierce—his offense conduct, his criminal history, his poor history of complying with court orders—demonstrates a lengthy sentence is the only way to deter him and to protect the public. Such a sentence will also reflect the seriousness of this offense and provide just punishment. The government respectfully requests a sentence of 180 months or more.

|  |  |
|---|---|
|  | MARK A. TOTTEN<br>United States Attorney |
| Dated: May 22, 2023 | /s/ *Alexis M. Sanford*<br>ALEXIS M. SANFORD<br>Assistant United States Attorney<br>United States Attorney's Office<br>P.O. Box 208<br>Grand Rapids, Michigan 49501<br>(616) 456-2404<br>alexis.sanford@usdoj.gov |